939 P.2d 578

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Brock CLIFFORD, Defendant–Appellant.**

No. 23046.

Court of Appeals of Idaho.

May 16, 1997.

Scott E. Axline, Blackfoot, for defendant–appellant.

Alan G. Lance, Attorney General; Myrna A.I. Stahman, Deputy Attorney General, Boise, for plaintiff–respondent.

WALTERS, Chief Judge.

This is an appeal from a judgment of conviction for driving without privileges. The judgment was entered following a bench trial in the magistrate division, and was upheld on an intermediate appeal to the district court. We likewise affirm.

## BACKGROUND FACTS AND PROCEDURE

In May 1995, Brock J. Clifford's driving privileges were suspended by a magistrate under I.C. § 18–1502(d) as the result of Clifford's conviction for underage consumption of alcohol. The suspension was for a period of three months. However, the magistrate also granted Clifford a restricted permit to operate a motor vehicle for the duration of the suspension, allowing him to drive "for work and health" only.

At about 6:30 p.m. on Saturday, June 10, 1995, the county sheriff, who was in an unmarked vehicle owned by the county, observed Clifford driving in Challis, Idaho. The sheriff recalled reading a legal notice in the local newspaper about the suspension of Clifford's driving privileges. The sheriff decided to follow Clifford's vehicle. Clifford drove for about a block and then pulled into the parking lot of a bowling alley and stopped, without the sheriff having turned on any emergency lights or signals to alert Clifford that he should stop in response to the sheriff's presence. After the sheriff drove into the lot and parked, Clifford got out of his vehicle and approached the sheriff to ask him what was going on. The sheriff asked Clifford for his driver's license and Clifford produced his restricted permit. When the sheriff inquired about Clifford's place of employment, Clifford said he worked in Boise. The sheriff then asked Clifford where he was going and Clifford said, "Right here to the bowling alley." The sheriff cited Clifford under I.C. § 18–8001 for driving without privileges.

The trial on the charge was held before the same magistrate who had suspended Clifford's privileges and had issued the temporary restricted permit. At trial, Clifford testified that when he saw the sheriff and stopped at the bowling alley, he was actually on his way to Round Valley to look for work although he was employed by a contractor in Boise. Clifford also admitted that he didn't tell the sheriff he was headed for Round Valley. The magistrate found Clifford guilty.

## ISSUES

Clifford raises four issues on appeal. First, he contends that the sheriff did not have reasonable suspicion to stop Clifford while Clifford was driving his vehicle and, therefore, any evidence gained as a result of the stop and arrest should have been suppressed and the charges against Clifford dismissed. Second, Clifford submits that the underlying suspension of his driving privileges was improper because the statute authorizing the suspension, I.C. § 18–1502(d), is unconstitutional. Third, he asserts that even if the suspension of his driving privileges was proper, he should have been charged for a violation of I.C. § 49–301 (driving without a valid license), rather than I.C. § 18–8001 (driving without privileges) because he had been issued a limited permit to drive and simply exceeded the limitation. Finally, Clifford contends that the evidence presented by the state was insufficient to support a finding of guilt, and that the magistrate erred by denying Clifford's motion for a directed verdict at the close of the state's evidence at trial.

## DISCUSSION

### 1. Suppression and Dismissal.

■ Clifford argues that the evidence obtained by the sheriff upon confronting Clifford in the parking lot at the bowling alley should have been suppressed and the case dismissed because the sheriff did not have reasonable suspicion to stop Clifford. This argument fails for the simple reason that the facts presented at the trial clearly showed

that the sheriff did not stop or unreasonably detain Clifford.

■ The undisputed evidence was that, without any signal or urging from the sheriff, Clifford stopped and parked his vehicle of his own volition, exited the vehicle and approached the sheriff's car to speak to the sheriff after the sheriff drove into the parking lot. Not every contact between police and a citizen raises Fourth Amendment concerns. For example, in *State v. Jordan*, 122 Idaho 771, 839 P.2d 38 (Ct.App.1992), this Court held that a motorist who was already stopped at a stoplight was not seized by police officers who approached to talk to the motorist, until the police told the motorist to pull over to the side of the street. We noted that a seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking him questions, or by putting questions to him if he is willing to listen. *See Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The dividing line for Fourth Amendment purposes appears to be whether an officer restricts the travel of a moving vehicle or restricts movements of the driver who has already stopped his vehicle by his own volition. *State v. Jordan, supra.* Neither of these events occurred in the present case.

■ Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Florida v. Rodriguez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The means of verifying identification may take the form of an operator's license, and a police officer's brief detention of a driver to run a status check on the driver's license after making a valid, lawful contact with the driver, is reasonable for purposes of the Fourth Amendment. *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (1992).

The same essentially happened here. Clifford produced his restricted permit for inspection by the sheriff during the officer-citizen encounter. The sheriff, as a result of investigation, concluded that Clifford was not driving his vehicle in compliance with the restricted permit but was driving without privileges.

We conclude that the evidence garnered by the sheriff during his encounter with Clifford was not suppressible as suggested by Clifford, nor was the charge dismissible on the ground that the arrest was unconstitutional as the result of an unreasonable stop by a police officer.

## 2. Constitutionality of I.C. § 18–1502(d).

Clifford contends that his driving privileges should not have been suspended under I.C. § 18–1502(d) for underage consumption of alcohol because that statute is unconstitutional, and that his subsequent conviction for driving without privileges therefore should be set aside. He argues that the statute violates equal protection and substantive due process requirements.

Clifford raised the constitutionality issue to the magistrate by way of a motion to dismiss filed on the morning of his trial. The prosecutor did not object to the motion on the grounds of untimeliness, *see I.C.R. 12(b) and (d)*, and, after hearing arguments on the motion, the magistrate denied the motion without explanation.

Clifford's challenge to the validity of the prior conviction appears to be a collateral attack; there is nothing in the record to show whether the constitutionality of I.C. § 18–1502(d) was raised during the course of Clifford's prosecution for underage consumption, or what the result of that issue might have been had it been pursued in that case. We note that such a challenge also might be raised by a post-conviction action under I.C. § 19–4901, but again the record does not show whether such an action was pursued or what the result might have been.

On appeal, Clifford continues to assert the same arguments regarding the unconstitutionality of I.C. § 18–1502(d) which were unpersuasive to the magistrate. Clifford relies upon an opinion issued by the Idaho Attorney General's Office in 1984 finding constitutional infirmities in a prior version of the statute to support his claim of unconstitutionality. The prior version addressed by the

Attorney General required the department of transportation to suspend for sixty days the driver's license or permit of a person under the age of 21 years who was found guilty of violating the law pertaining to the possession or use of beer, wine or other alcoholic beverage. However, whatever value the Attorney General's opinion might have, it is greatly diminished due to the subsequent amendments to the statute in 1987, twice in 1989, once in 1990, and again in 1994. Those amendments removed the authority to suspend licenses from the transportation department and vested the authority in the courts, together with the additional power to issue restricted driving privileges, as deemed appropriate by the court, during the period of the suspension.

■ Apart from the inapposite, thirteen-year old Attorney General's opinion which addresses a significantly different version of the statute, Clifford has cited no authority for his argument that the current version of I.C. § 18–1502(d) is unconstitutional either on the ground of a denial of equal protection or as a deprivation of substantive due process. Assertions of error which are not supported either by argument or by cited authorities will not be considered on appeal. *State v. Zichko*, 129 Idaho 259, 923 P.2d 966 (1996). We conclude that the magistrate correctly denied Clifford's motion to dismiss.

**3. Appropriate Charge.**

■ Next, Clifford contends that he should not have been charged with driving without privileges under I.C. § 18–8001, but instead he should have been cited under I.C. § 49–301 for driving on an invalid license. Section 49–301 provides that "[n]o person ... shall drive any motor vehicle upon a highway unless the person has a valid Idaho driver's license." Idaho Code § 18–8001 provides that "[a]ny person who drives or is in actual physical control of any motor vehicle upon the highways of this state with knowledge that his driver's license, driving privileges or permit to drive is revoked, disqualified or suspended in this state or any other jurisdiction is guilty of a misdemeanor." Clifford argues that he was not without a license because he had been issued a temporary

permit with restrictions and that, at best, his driving exceeded the restrictions and he was therefore operating his vehicle with an "invalid license," but not "without privileges." We disagree.

The validity of Clifford's license or privilege to drive was not in question; that privilege had been suspended in May by the magistrate for a period of three months. Clifford was found guilty of driving in June while that privilege was suspended. The temporary permit granted by the magistrate limited the nature of Clifford's driving capability during the period of suspension. When Clifford exceeded the permission granted by the magistrate, then Clifford was not driving without a valid license, he was driving without any privileges whatsoever because the period had not yet expired during which his driving privileges had been suspended.

Clifford's violation of the restriction on the temporary permit left him operating a vehicle without privileges, not for lack of a valid license. Once the suspension period ended and Clifford took the steps necessary to have his privileges reinstated, he would continue to hold a valid license; however, if Clifford did not have his privileges reinstated at the conclusion of the suspension period, then he could be cited for violation of I.C. § 49–301 upon operating a motor vehicle because at that point his privileges would no longer be suspended, but he would not have a valid license to drive. Because the violation here occurred during the period of suspension, Clifford properly was charged with driving without privileges.

**4. Sufficiency of the Evidence.**

■ As his final issue, Clifford contends that the record does not substantiate, beyond a reasonable doubt, that he was guilty of driving without privileges. He approaches this issue from two directions. First, he asserts that because he testified at trial that he was on his way to Round Valley to seek employment, then the state failed to show both that he was operating his vehicle illegally and that he knew the purpose for which he was driving was a violation. The second approach is the suggestion that the magistrate should have granted Clifford's request

for a directed verdict at the close of the state's case. This latter approach is difficult to follow, since the argument seems to include consideration of Clifford's testimony about his intent to travel to Round Valley, which testimony was given subsequent to the motion for a directed verdict. Furthermore, the ruling on Clifford's motion—more accurately characterized as a motion for acquittal under I.C.R. 29 than as a motion for a directed verdict where, as in this case, the issues at trial are to be determined by a magistrate presiding without a jury—is not independently reviewable inasmuch as Clifford presented evidence on his defense after his motion was denied. *State v. Watson*, 99 Idaho 694, 587 P.2d 835 (1978); *State v. Ashley*, 126 Idaho 694, 698–700, 889 P.2d 723, 727–29 (Ct.App. 1995), *on denial of petition for rehearing*. We thus are confronted with a review of the totality of the evidence submitted at the trial, not merely that presented by the prosecution before resting its case. *State v. Watson, supra.*

Our standard for the review of a judgment of conviction which allegedly is not supported by the evidence is well settled. We will not overturn a verdict where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Decker*, 108 Idaho 683, 701 P.2d 303 (Ct.App.1985). On appeal, we will not substitute our view for that of the factfinder as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Id.* In addition, the evidence is to be considered in the light most favorable to the prosecution. *Id.*

Clifford's temporary permit authorized him to drive "for work and health only." When asked by the sheriff where he was going, at 6:30 p.m. on Saturday, June 10, 1995, in Challis, while Clifford was employed in Boise, Clifford replied: "Right here to the bowling alley." The permit did not authorize Clifford to drive either to a bowling alley, unless he was employed there, or to look for work. Indeed, in ruling on Clifford's case at the conclusion of the trial, the magistrate

explained that although the evidence was disputed as to whether Clifford told the sheriff he was looking for work, the magistrate did not find credible Clifford's testimony that he was in fact looking for work, and that even if Clifford had been looking for work, the temporary permit did not allow it. The magistrate also explained that if Clifford wanted his temporary permit expanded to include searches for employment,

> he would have had to come back to the court and make a request for that and in the past when I have granted those sorts of licenses, they are very specific for time frames, for work purp—the opportunity to drive to look for work. So I will find that he has committed the offense....

As noted, we will not substitute our view as to the credibility of the witnesses, the weight to be given the testimony, and the reasonable inferences to be drawn from the evidence. Upon review of the record and consideration of the arguments presented, we hold that there was substantial evidence upon which a reasonable trier of fact could have found that the state had proved the essential elements of the crime of driving without privileges beyond a reasonable doubt. Accordingly, we uphold the magistrate's decision that Clifford was operating his vehicle without privileges, as charged.

The judgment of conviction is affirmed.

LANSING and PERRY, JJ., concur.